UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY EARL FIELDS,

      Petitioner,

                                        CASE NO. 2:12-15119
                                        HONORABLE PAUL D. BORMAN
v.                                     UNITED STATES DISTRICT JUDGE

DAVID BERGH,

      Respondent.

_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS
CORPUS, (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL
_IN FORMA PAUPERIS_**

      Timothy Earl Fields, ("petitioner"), confined at the Michigan Reformatory in Ionia,

Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro*

*se* application, petitioner challenges his conviction for three counts of assault with intent to

commit murder, Mich. Comp. Laws § 750.83, two counts of assault with intent to do great bodily

harm less than murder, Mich. Comp. Laws § 750.84, possession of marijuana, Mich. Comp.

Laws § 333.7403(3)(2)(d), felon in possession of a firearm, Mich. Comp. Laws § 750.224f,

possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b, and being

a second habitual felony offender, Mich. Comp. Laws § 769.10. For the reasons that follow, the

application for a writ of habeas corpus is DENIED WITH PREJUDICE.

**I. BACKGROUND**

      Petitioner was convicted of the above offenses following a jury trial in the Genesee

County Circuit Court. Petitioner was acquitted of a charge of operating or maintaining a drug

house.  This Court recites verbatim the relevant facts regarding petitioner's conviction from the

Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on

habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th

Cir. 2009):

> Officers from the Genesee County Sheriff's Department drug enforcement team
> executed a search warrant at defendant's home on February 9, 2006.  Two of the
> officers were in uniform, others wore raid gear, and all officers and vehicles present
> were clearly marked as being from the "Shariff's (sic) Department."  The officers
> initially attempted to approach the house with stealth until a motion light came on
> and revealed a surveillance camera.  Officers then yelled, "police, search warrant"
> and forced open the house doors, whereupon they encountered defendant, who fired
> shots at them, injuring one of the officers.  The officers retreated and some further
> exchanges of gunfire ensued.  Defendant eventually surrendered peacefully.  No
> other occupants were found in the house, but officers found a .45 handgun and 25 or
> 25 spent .45 casings, as well as 14 individually-wrapped packets of marijuana and
> a digital scale.  Defendant was found to have $1,825 on his person and gunshot
> residue on his hands.  DNA testing of the handgun revealed that defendant's DNA
> was the most prevalent DNA sample found on the gun.
>
> Sergeant David Dwyre advised defendant of his *Miranda* rights and attempted to
> interview defendant.  Defendant asserted his right to remain silent and his right to
> counsel, and he told Dwyre the name of an attorney he intended to contact.  Dwyre
> terminated the interview, but later returned to swab defendant's hands to conduct the
> test for the presence of gunshot residue.  Dwyre offered to replace a bandage on
> defendant's hand at that time.  Dwyre further explained to defendant the nature of the
> gunshot residue test, after which defendant told Dwyre that he had never fired a gun.
> Defendant then told Dwyre that "the vice" began shooting at him.
>
> At trial, defendant maintained that he mistakenly believed that the men entering his
> house were unlawful intruders, and he attributed his confused state of mind to the
> side effects of Vicodin.  Defendant had been prescribed Vicodin, which can cause
> fatigue and dizziness, after injuring his hand in a snowblower incident.  Witnesses
> testified that they had been with defendant earlier that evening, and defendant had
> become sleepy after taking Vicodin.  Defendant testified that he had received death
> threats from Faith Shaw, who admitted that she had threatened to have defendant
> beaten up but denied calling him on the day of the raid.  Defendant reiterated his
> belief that officers had been intruders carrying out Shaw's threats in a recorded
> telephone call he made from jail.

Defendant was initially tried in March 2007, but a mistrial was declared because the jury was unable to reach a verdict. Defendant was subsequently retried in January 2008. The second jury convicted defendant of three counts of assault with intent to commit murder, two counts of the lesser offense of assault with intent to do great bodily harm less than murder, felon in possession of a firearm, and felony-firearm. It also found him guilty of possession of marijuana, but acquitted him of operating or maintaining a drug house.

*People v. Fields,* No. 384190, 1-2 (Mich.Ct.App. July 21, 2009)(internal footnote omitted).

Petitioner's conviction was affirmed on appeal. *Id;, lv. den.* 485 Mich. 1010, 775 N.W.2d

781 (2009).

Petitioner filed a post-conviction motion for relief from judgment, which was denied.

*People v. Fields,* No. 06-18312-FC (Genesee County Circuit Court, March 14, 2011). The

Michigan appellate courts denied petitioner leave to appeal. *People v. Fields,* No. 305415

(Mich.Ct.App. December 19, 2011); *lv. den.* 493 Mich. 882, 821 N.W 2d 887 (2012).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The Michigan Court of Appeals decision that the trial court did not violate petitioner's state and federal rights by admitting prior testimony of Lieutenant Shanlian of out of court statements made by Christina Bruce Mason was contrary to clearly established federal law.

II. The Michigan Court of Appeals decision that petitioner was denied his Sixth Amendment right to counsel and his Fifth Amendment rights where the police did not cease contact with him, and when his statement was admitted against him at trial, where the court ruled that petitioner was not entitled to a *Walker* hearing on the alleged statements, was contrary to clearly established federal law.

III. The Michigan Court of Appeals decision that the trial court's restrictions on the cross-examination and exploration of evidence in support of the defense theory did not infringe on petitioner's right to confrontation, to present a defense, and to a fair trial, was contrary to clearly established federal law, as well as being an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

IV. The decision of the Michigan courts that petitioner failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D) with regard to the question

3

of whether the trial court abused its discretion when it denied petitioner's motion for relief from judgment without first conducting an evidentiary hearing, was contrary to clearly established federal law, as well as being an unreasonable determination of the facts in light of the evidence presented.

V. The decision of the Michigan courts that petitioner had failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D) with regard to the question of whether the trial court failed to protect his right to an impartial jury, and Sixth Amendment right to counsel at a critical stage of the proceedings by accepting at face value the statement of a rogue juror who not once, but twice withheld information that she personally knew two different police officers in this case, and by juror number one's *ex parte* communication with the bailiff to the trial judge which was not revealed until a discussion with the trial court on the juror's non-disclosure, and if trial counsel waived the issue by failing to request a mistrial, then petitioner should have been granted at a minimum an evidentiary hearing in order to make a record on a claim of ineffective assistance of counsel, was contrary to clearly established federal law, as well as being an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

VI. The decision of the Michigan courts that petitioner had failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D) with regard to the question of whether petitioner was entitled to relief from judgment on the basis that he was denied his right to the effective assistance of counsel by trial counsel's 1) failure to object to the prosecution's showing on [the] unavailability of witnesses, 2) failure to challenge defective jury instructions, 3) failure to request a mitigating circumstances instruction, was contrary to clearly established federal law.

VII. The decision of the Michigan courts that petitioner had failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D) with regard to the question of whether petitioner was entitled to relief from judgment on the basis of ineffective assistance of appellate counsel's failure to obtain the transcripts from the first trial proceedings, and for failing to raise significant and obvious issues which would have required a new trial on [the] appeal of right, was contrary to clearly established federal law.

In a supplemental habeas petition, petitioner seeks relief on an eighth ground:

VIII.  A writ of habeas corpus should issue where trial counsel rendered ineffective assistance when counsel failed to challenge the admission of Ms. Mason's out-of-court hearsay statements on federal constitutional grounds.

## II.  STANDARD OF REVIEW

4

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S.

5

320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection

6

of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

## III.  DISCUSSION

### A.  The motion to amend the habeas petition.

Petitioner filed an amended or supplemental habeas petition, which is construed as a motion to amend the petition for writ of habeas corpus. *See Woods v. Carey,* 525 F.3d 886, 888-90 (9th Cir. 2008).  In his proposed eighth claim, petitioner alleges that his trial counsel was ineffective for failing to object to the admission of Christina Mason's out-of-court statements as inadmissible hearsay evidence.  In the first claim raised by petitioner in his original habeas petition, petitioner alleges that the admission of Christina Mason's hearsay statements violated his right to confrontation.

Petitioner filed his proposed amended habeas petition more than one year after filing his original habeas petition.  28 U.S.C. § 2244(d) imposes a one-year limitations period on habeas applications by state prisoners.  Habeas petitions generally must be filed no more than one year from the date that the conviction became final. 28 U.S.C. § 2244(d)(1)(A).  Fed.R.Civ.P. 15(c)(1), which has been applied to habeas cases, creates an exception to that rule.  When a habeas petitioner files an original petition within the one-year deadline, as petitioner did here, and subsequently presents new claims in an amended petition that is filed after the one year limitations period expired, the new claims relate back to the date of the original petition if the new claims share a "common core of operative facts" with the original petition. *See Mayle v. Felix*, 545 U.S. 644, 664 (2005).

7

The Court grants petitioner's motion to amend the habeas petition because petitioner's eighth claim alleging trial counsel's alleged ineffectiveness in failing to object to the admission of Christina Mason's out-of-court statements shares the same common core of operative facts as the claim raised in petitioner's original habeas petition concerning the admissibility of Mason's statements. *See Cowan v. Stovall,* 645 F.3d 815, 819 (6th Cir. 2011).

### B.  Claims # 1 and # 8.  The claims involving the admission of Christina Mason's out-of-court statements.

In his first claim, petitioner argues that his Sixth Amendment right to confrontation was violated when the trial judge erred in permitting Detective Lieutenant Kevin Shanlian to testify about out-of-court statements made to him by Christina Mason.  In his related eighth claim, petitioner alleges that trial counsel was ineffective for failing to object to the admission of these statements.

Respondent contends that petitioner's first claim is procedurally defaulted because trial counsel failed to preserve the issue by objecting at the trial court level and the Michigan Court of Appeals relied on this failure to reject petitioner's first claim.

A federal claimant's procedural default precludes federal habeas review only if the last state court judgment rendering judgment in the case clearly and expressly rests its judgment on a procedural default or bar. *Harris v. Reed*, 489 U.S. 255, 262 (1989).  Although the Michigan Court of Appeals mentioned that petitioner's Confrontation Clause issue had not been preserved at the trial court level, the court did not expressly indicate that they were relying on this failure to reject petitioner's claim.  It is thus unclear whether petitioner's first claim is procedurally defaulted.  In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th

8

Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  *Lambrix*, 520 U.S. at 525.  The Court believes that it is easier to address the merits of petitioner's claim.

The Michigan Court of Appeals agreed with petitioner that the admission of Christina Mason's statements violated his right to confrontation, but ruled that their admission was harmless:

> However, Mason's testimony regarding defendant's sale of drugs was only relevant to his charges of operating a drug house or possession of drugs with the intent to deliver.  Defendant was acquitted of these charges and convicted of the lesser offense of simple possession of marijuana.  Clearly, the jury was not influenced by Mason's testimony in this regard.  Mason's statement that she was afraid to reveal information about defendant was brief, isolated, and purely subjective and uncorroborated opinion presented in a lengthy trial detailing evidence of the police raid and investigation.  Given the jury's clear disregard of Mason's reference to defendant's drug dealing, we are persuaded that the admission of her testimony, while erroneous, did not violate defendant's substantial rights.

*Fields,* No. 284190, Slip. Op. at p. 3.

On direct review of a conviction, a constitutional error is considered harmless only if the reviewing court finds it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967)).  However, in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.

Confrontation Clause violations are subject to harmless error review. *See Bulls v. Jones,*

9

274 F.3d 329, 334 (6th Cir. 2001).  In determining whether a Confrontation Clause violation is harmless under *Brecht*, a court should consider the following factors: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case." *See Jensen v. Romanowski,* 590 F.3d 373, 379 (6th Cir. 2009)(citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

The admission of Christina Mason's out-of-court statements to Lieutenant Shanlian did not have a substantial and injurious effect or influence on the jury's verdict.  Lieutenant Shanlian testified that Mason informed him that petitioner sold marijuana out of his house but then indicated that she was not going to talk any further about his drug sales because "he is family and I am scared of him." (Tr. 3/16/07, pp. 58-65). [1]   Contrary to petitioner's claim, Lieutenant Shanlian did not testify that Mason had told him that she had called petitioner and warned him that the police were coming to raid his house.  Petitioner was acquitted of operating or maintaining a drug house, thus, he has failed to show substantial or undue prejudice from the admission of Mason's out-of-court statements concerning his sales of marijuana. *See U.S. v. Dais,* --- F. App'x. ----, 2014 WL 982970, p. 8 (6th Cir. March 14, 2014).  Moreover, when "[V]iewed through the deferential lens of AEDPA, the state court's harmlessness ruling must stand" because based on the record in this case, the Michigan Court of Appeals reasonably rejected any potential error in the admission of Mason's hearsay statements as harmless error.

---

[1]   See this Court's Dkt. # 8-18.  This was Lieutenant Shanlian's testimony from petitioner's first trial. Because Lieutenant Shanlian was not available for petitioner's second trial, his testimony from the first trial was read into the record. See Tr. 1/15/08, pp. 8-10 [This Court's Dkt. # 9-5].

*See Kennedy v. Warren,* 428 F. App'x. 517, 522, 523 (6ᵗʰ Cir. 2011).

In his related eighth claim, petitioner contends that trial counsel was ineffective for failing to object to the admission of Mason's out-of-court statements to Lieutenant Shanlian. Although trial counsel objected to the admission of these statements to Lieutenant Shanlian at petitioner's first trial, which ended in a hung jury, he did not object again to the admission of these statements when Lieutenant Shanlian's videotaped testimony was played at petitioner's second trial. Petitioner argues that trial counsel's objections at petitioner's first trial involving the admission of Mason's out-of-court statements to Lieutenant Shanlian were insufficient to preserve an objection to the admission of these statements at his second trial, particularly in light of the fact that Mason testified at petitioner's first trial, but did not testify at petitioner's second trial and was thus not available for cross-examination.

To prevail on his ineffective assistance of counsel claim, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

"The prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6ᵗʰ Cir. 2009). Because the admission of Mason's out-of-court statements was harmless error, petitioner cannot satisfy *Strickland's* prejudice requirement. *See e.g. Bell v. Hurley,* 97 F. App'x. 11, 17 (6ᵗʰ Cir. 2004). Petitioner was not prejudiced by counsel's failure to object to the admission of Mason's

11

statements at petitioner's second trial.  Petitioner is not entitled to habeas relief on his first or

eighth claims.

### C.  Claim # 2.  The claim involving the admission of petitioner's statements to Detective Dwyre.

Petitioner next argues that his statements to Detective Dwyre should have been

suppressed because Detective Dwyre violated his *Miranda* rights by questioning petitioner after

he had invoked his right to counsel.

The Michigan Court of Appeals rejected petitioner's claim:

> The evidence simply does not show that any interrogation took place after defendant
> invoked his constitutional rights.  Defendant asked Dwyre what the gunshot residue
> test was, and Dwyre answered; defendant then stated "that he never shot a gun."
> Dwyre then continued the conversation by telling defendant that he "thought you
> were going to say that you were being robbed and you didn't know it was the
> police," after which defendant began crying and again stated that he never shot a
> gun.  After the gunshot residue test was completed, defendant asked Dwyre what
> he would do, and said that "they were trying to kill me," further explaining that "the
> vice, they just started shooting."  Dwyre then left the room; Dwyre also referred
> defendant for a psychiatric evaluation and had him placed in anti-suicide garb.
> While Dwyre's conversation with defendant could be considered words reasonably
> likely to elicit an incriminating response, it was defendant who initiated the
> conversation both before and after the gunshot residue test.  A suspect may waive
> his rights by initiating further communication after asserting his *Miranda* rights.
> Under the circumstances, suppression of defendant's statements was not required.
> Defendant does not otherwise contest the voluntariness of his statements.

*Fields,* No. 284190, Slip. Op. at p. 3 (internal citation and footnote omitted).

A prosecutor may not use a defendant's statements which stem from custodial

interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are

effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona,* 384

U.S. 436, 444 (1966).  Unless other means are devised to inform a suspect of his right to silence

and a "continuous opportunity to exercise it," the following warnings are required to be given to

12

a suspect:

    1. the person must be warned that he has a right to remain silent;
    2. that any statement he does make may be used against him;
    3. and that he has a right to the presence of an attorney, either appointed or
    retained.

*Miranda,* 384 U.S. at 444.

When an accused invokes his right to counsel during custodial interrogation, that

interrogation must cease until counsel is made available, unless the accused initiates further

conversation with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). The rule in

*Edwards* is considered "a corollary to *Miranda's* admonition that '[i]f the individual states that

he wants an attorney, the interrogation must cease until an attorney is present.'" *Arizona v.*

*Roberson*, 486 U.S. 675, 680 (1988)(quoting *Miranda,* 384 U.S. at 474).

Petitioner has failed to establish that his statements were obtained in violation of

*Miranda* or *Edwards.* Petitioner's statements to Detective Dwyre were properly admitted

because they were not the product of custodial interrogation in that petitioner initiated the

conversation with Detective Dwyre and not the other way around.

The special procedural safeguards outlined in *Miranda* are required not merely when a

suspect is taken into custody, but instead where a suspect in custody is subjected to

interrogation. *Rhode Island v. Innis,* 446 U.S. 291, 300 (1980). "'Interrogation', as

conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and

beyond that inherent in custody itself." *Id. Miranda* warnings are required whenever a person

in custody is subject either to express questioning or its "functional equivalent." *Rhode Island v.*

*Innis,* 446 U.S . at 300-01. Thus, for *Miranda* purposes, the term "interrogation" refers not only

to express questioning of a suspect by law enforcement officials, but also to "any words or

13

actions on the part of the police (*other than those normally attendant to [an] arrest or custody*) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301 (emphasis added).  Non-interrogative interactions between police and suspects do not violate *Miranda* or *Edwards. See Montejo v. Louisiana,* 556 U.S. 778, 795 (2009).

In *Oregon v. Bradshaw*, 462 U.S. 1039 (1983), a plurality of the Supreme Court concluded that the police could speak to a defendant, without depriving him of his rights, when the defendant asked "Well, what is going to happen to me now?" even though the defendant had previously invoked his right to counsel. *Id*. at 1041–42. The plurality concluded that by asking this question, the defendant had "evinced a willingness and a desire for a generalized discussion about the investigation." *Id*. at 1045–46.  By contrast, the dissent in *Bradshaw* indicated that in order to reinitiate an interrogation after invoking the right to counsel, the suspect must "demonstrate a desire to discuss the subject matter of the investigation." *Id*. at 1055. The Sixth Circuit "has reconciled the plurality and dissent in *Bradshaw* as stating a general rule that 'an *Edwards* initiation occurs when, without influence by the authorities, the suspect shows a willingness and a desire to talk generally about his case.'" *Davie v. Mitchell*, 547 F.3d 297, 305 (6th Cir. 2008)(quoting *United States v. Whaley*, 13 F.3d 963, 967 (6th Cir. 1994)).

The Michigan Court of Appeals reasonably rejected petitioner's claim because there is no indication that Detective Dwyre attempted to interrogate petitioner after he had invoked his right to counsel.  Detective Dwyre went to perform a gunshot residue test on petitioner. Petitioner asked him what the test was for and Detective Dwyre explained the purpose of the test.  At that point, petitioner indicated that he "never shot a gun."  The Michigan Court of

14

Appeals reasonably concluded that petitioner at this point reinitiated a discussion of the case.

Although Dwyre responded to petitioner's remark by stating that he thought that petitioner was

going to tell Dwyre that he thought he was being robbed and did not know that it was the police,

once a suspect volunteers information, it is permissible for a police officer to ask a follow-up

question to clarify the information given by the suspect. *See Tolliver v. Sheets,* 594 F.3d 900,

921 (6th Cir. 2010).  After the gunshot residue test was completed, petitioner asked Detective

Dwyre what was going to happen to him and then stated that "they were trying to kill me" and

that "the vice, they just started shooting."  There is no allegation, let alone any indication, that

Detective Dwyre made any statements to petitioner prior to these remarks that would be

reasonably considered to be interrogation.  Because petitioner freely initiated the conversations

with Detective Dwyre, without any improper influence or pressure from the officer, the

admission of his statements to Detective Dwyre did not violate *Edwards. Davie,* 547 F.3d at

305; See also *Fautenberry v. Mitchell*, 515 F.3d 614, 630 (6th Cir. 2008).  Petitioner is not

entitled to habeas relief on his second claim.

### D.  Claim # 3.  The denial of the right to cross-examine Detective Dwyre concerning recorded telephone calls from petitioner to his brother.

Petitioner next claims that the trial judge violated his right to cross-examination by

refusing to allow defense counsel to question Detective Dwyre about the contents of recorded

telephone calls made by petitioner to his brother from jail, in which he indicated that he

believed that the police were actually associates of Faith Shaw who were trying to kill him.

Although the judge refused to allow counsel to question Detective Dwyre about the taped

conversations, the judge allowed the actual recordings of the telephone calls between petitioner

and his brother to be played for the jury.

The Michigan Court of Appeals rejected petitioner's claim:

Defense counsel apparently intended to contrast defendant's statements with Dwyre's testimony that defendant had said that "the vice" was trying to shoot at him. The trial court held that "the tape pretty much speaks for itself" and sustained the prosecutor's objections under MRE 1002, the "best evidence" rule, to that line of questioning. MRE 1002 provides that the content of a writing, recording, or photograph must be proved by the original writing, recording, or photograph, except as otherwise provided by statute or the rules of evidence. Here, defendant's recorded calls were played for the jury, so the trial court correctly found that there was no basis for proving the contents of calls through any other means. The right to confront witnesses is not unlimited. *People v. Adamski*, 198 Mich.App. 133, 138, 497 N.W.2d 546 (1993). Defense counsel's apparent intent was to have Dwyre openly acknowledge that defendant had told another person that he believed the intrusion into his home was related to Shaw's threat. However, the pertinent evidence was introduced, and defense counsel was free to argue to the jury that defendant's statements in those calls were more credible than Dwyre's testimony. Defendant was not precluded from attempting to undermine Dwyre's testimony or from putting on a meaningful defense.

*Fields,* No. 284190, p. 4.

"[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defendant might wish.'" *United States v. Owens*, 484 U.S. 554, 559 (1988)(internal quotations omitted). The Confrontation Clause of the Sixth Amendment does not prevent a trial judge from imposing limits on a defense counsel's inquiry into potential bias of a prosecution witness; to the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, a witness' safety, or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. at 679.

In the present case, the jailhouse recordings of the telephone conversations between

16

petitioner and his brother, in which petitioner told his brother that he thought that the entry into his house was related to Faith Shaw's prior threat, were played for the jury. Defense counsel was able to contrast petitioner's statements from the telephone conversations with his statement to Detective Dwyre that the "vice" had tried to shoot at him. Any testimony from Detective Dwyre concerning the contents of these jailhouse recordings would have been cumulative to the recorded conversations themselves, thus, the trial judge's refusal to permit defense counsel to cross-examine Detective Dwyre about the contents of these recordings did not violate petitioner's right to confrontation or his right to present a defense. *See Washington v. Renico*, 455 F.3d 722, 728-29 (6th Cir. 2006).

### E.  Claim # 4.  The claim involving the trial court's failure to conduct an evidentiary hearing on petitioner's post-conviction motion.

In his fourth claim, petitioner claims that the state trial court erred in denying his post-conviction motion for relief from judgment without conducting an evidentiary hearing.

This Court notes that "[t]he Sixth Circuit consistently [has] held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir. 2007). Thus, a federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief. *See Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001). The reason for this is that the states have no constitutional obligation to provide post-conviction remedies. *Id.* (citing to *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)). Challenges to state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.'" *Kirby v. Dutton*, 794

F.2d 245, 246 (6th Cir. 1986)(quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).  "A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not 'result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.'" *Cress,* 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 247).  Thus, the "'scope of the writ'" does not encompass a "'second tier of complaints about deficiencies in state post-conviction proceedings.'" *Cress*, 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 248).  "[T]he writ is not the proper means to challenge collateral matters as opposed to the underlying state conviction giving rise to the prisoner's incarceration." *Id.* (internal quotations omitted).

The denial of an evidentiary hearing by a state court on post-conviction review does not state a claim upon which habeas relief can be granted. *See e.g. Cornwell v. Bradshaw,* 559 F.3d 398, 411 (6th Cir. 2009).  Because petitioner sought an evidentiary hearing with respect to claims that he raised in his post-conviction motion, the failure by the state courts to grant him an evidentiary hearing on these claims would not entitle him to relief.  Moreover, there is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel even on direct appeal. *See Hayes v. Prelesnik,* 193 F. App'x. 577, 584-85 (6th Cir. 2006).  Accordingly, petitioner is not entitled to habeas relief on his fourth claim.

### F.  Claims ## 5, 6, and 7.  The procedurally defaulted claims.

Respondent contends that petitioner's remaining claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required

18

by Mich.Ct. R. 6.508(D)(3).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v.*

19

*Reed*, 489 U.S. at 263.  If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

In the present case, the Genesee County Circuit Court judge, in denying petitioner's post-conviction motion, after reciting the "cause and prejudice" standard under M.C.R. 6.508(D)(3), ruled that petitioner had failed to satisfy the "good cause" requirement under M.C.R. 6.508(D)(3) for not raising these claims on his direct appeal. *Fields,* No. 06-18312-FC, Slip. Op. at p. 1-2.  The judge further refused to waive the "good cause requirement" contained in M.C.R. 6.508(D)(3), because he was not convinced that there was a "significant possibility that Defendant is innocent." *Id.,* at p. 2.

Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's post-conviction claims are clearly procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F.3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard,* 405 F.3d 459, 477 (6th Cir. 2005). [2]

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

*Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent."

---

[2] Petitioner could not have procedurally defaulted his seventh claim which alleges the ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette*, 624 F.3d at 291. However, for the reasons stated below, petitioner is not entitled to habeas relief on this claim.

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment.  Appellate counsel filed a forty four page appellate brief raising five claims, including the first three claims that petitioner presented in his original habeas petition, as well as the eighth claim that petitioner presented in his supplemental petition.  Petitioner has not shown that appellate counsel's strategy in presenting these five claims and not raising other claims was deficient or unreasonable.  Moreover, for the reasons stated by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners."  Because the defaulted claims are not "dead bang winners," petitioner has

failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano,* 228 F.3d 674, 682-83 (6th Cir. 2000).

Moreover, because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by petitioner. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010).

To the extent that petitioner contends that appellate counsel was ineffective for failing to obtain the transcripts from his first trial, which ended in a hung jury, petitioner is not entitled to habeas relief or to use this failure to excuse any default because petitioner has not shown why his appellate counsel's failure to obtain a transcript of his first trial affected the outcome of his second trial or his appeal from that trial. *See Wright v. Hopper,* 169 F.3d 695, 708 (11th Cir. 1999).

Petitioner failed to show cause to excuse his default of the claims that he raised for the first time on state post-conviction review. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his fifth or sixth claims as a ground for a writ of habeas corpus in spite of the procedural default. Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's procedurally defaulted claims on the merits. *See Johnson v. Smith*, 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002).

Finally, assuming that petitioner had established cause for the default of his claims, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief.  The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F.3d 883, 891 (6ᵗʰ Cir. 2007).  For the reasons stated by Assistant Michigan Attorney General in his answer, petitioner has failed to show that his procedurally defaulted claims have any merit. Petitioner is not entitled to habeas relief on his procedurally defaulted claims.

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.  "The district court must issue or

deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d at 885. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV. CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: April 23, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 23, 2014.

s/Deborah Tofil
Case Manager